| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO.: 3:26-CR-162-SCR |
| | ) | |
| v. | ) | **BILL OF INFORMATION** |
| | ) | |
| GREGORY HARRIS | ) | 18 U.S.C. § 371 |
| | ) | |

THE UNITED STATES ATTORNEY CHARGES:

At the specified time and at all relevant times:

### Introduction

1. From at least in or about 2021, through at least in or about 2023, the defendant, GREGORY HARRIS, TIMOTHY RANDOLPH INGRAM, and unindicted co-conspirator M.S., and others known and unknown, conspired to knowingly make false statements and reports in connection with loan applications for the purpose of influencing a mortgage lending business's lending decisions. HARRIS, INGRAM, and M.S., submitted, and caused to be submitted, to Mortgage Company A, false and misleading mortgage loan applications, together with false and misleading supporting documents, including false tax returns, and fabricated profit and loss statements, invoices, and CPA letters, which inflated loan borrowers' income and assets, all for the purpose of influencing Mortgage Company A to approve loans to borrowers. As a result of the conspiracy, Mortgage Company A disbursed millions of dollars in loan proceeds at closings for the purchase of residential real estate.

### Relevant Background

2. HARRIS was the owner of Mass Marketing Financial Services, LLC, dba Rent Busters ("Rent Busters"), a debt repair service and mortgage loan consulting business. HARRIS, through Rent Busters, acted as a third-party intermediary or consultant hired by borrowers to assist with obtaining mortgage loans.

3. INGRAM resided in Fort Mill, South Carolina and was a tax return preparer and owner of South End Tax and Bookkeeping located in Charlotte, North Carolina. At the direction of his co-conspirators, INGRAM prepared tax returns and created false and fabricated documents that were submitted to Mortgage Company A.

4. Co-conspirator M.S. resided in Davidson and Huntersville, North Carolina, and was employed as a senior loan officer and sales manager for Mortgage Company A.

5. Mortgage Company A was a mortgage lending business that had offices in the Western District of North Carolina and elsewhere.

1

6.     Mortgage Company A required borrowers for mortgage loans to provide truthful information, including truthful information about the sales price of the property and the buyers' employment, income, financial condition, assets, liabilities, sources of down payment, and intention to occupy the property. This information was relied upon by Mortgage Company A in evaluating, approving, and funding loans.

### The Conspiracy

7.     HARRIS and others, both known and unknown, referred prospective borrowers to M.S. to assist them in applying for mortgage loans with Mortgage Company A.

8.     If a referred borrower did not have filed tax returns or the borrower's filed tax returns did not evidence sufficient income to obtain the desired mortgage loan, HARRIS or M.S. directed the borrower to INGRAM to assist with preparing tax returns to be filed or amending previously filed tax returns to reflect additional income.

9.     HARRIS and M.S. provided INGRAM with financial information to use for the preparation of the borrowers' tax returns, including income amounts, and directed INGRAM to prepare tax returns that showed sufficient income for the borrowers to qualify for the loans. INGRAM prepared and caused to be filed, tax returns based on this financial information.

10.     HARRIS and M.S. also directed INGRAM, who was not a certified public accountant (CPA) to prepare and sign CPA Letters containing false information concerning the borrowers' tax filing history and business ownership, among others. INGRAM received the information contained in these letters from HARRIS or M.S. and never verified with the borrowers that the information was correct. M.S. submitted the CPA Letters to Mortgage Company A as part of the mortgage loan applications.

11.     M.S. directed INGRAM to falsely represent that he audited the borrowers' financials. In some instances, M.S. directed INGRAM to prepare profit and loss statements containing false financial information about the borrowers' businesses and to attest that he had audited the financials. M.S. submitted the CPA Letters to Mortgage Company A as part of the mortgage loan applications.

12.     M.S. directed INGRAM to prepare fabricated invoices for inclusion in the borrowers' loan applications in order to substantiate the borrowers' claimed income. M.S. submitted the invoices to Mortgage Company A as part of the mortgage loan applications.

13.     HARRIS, INGRAM, and M.S. prepared, and caused to be prepared, and submitted, and caused to be submitted, to Mortgage Company A, false mortgage loan applications and fabricated supporting documents on behalf of borrowers. The mortgage loan applications contained false statements that inflated the borrowers' income and assets and falsely represented the borrowers' ability to repay the loan, among others, all for the purpose of inducing Mortgage Company A to approve loans to borrowers and then to disburse millions of dollars in loan proceeds at closings for the purchase of residential homes.

2

**Borrower B.M.**

14. On or about April 27, 2023, Borrower B.M. emailed INGRAM Borrower B.M.'s 2021 and 2022 tax returns that were filed with the Internal Revenue Service ("IRS").

15. On or about May 16, 2023, HARRIS emailed Borrower B.M. to introduce M.S. as the loan officer. The email detailed the purchase price of the residence, the amount of the down payment, the loan amount requested, and the type of loan.

16. Between on or about May 16, 2023, and on or about June 9, 2023, HARRIS, INGRAM, and M.S. emailed each other to share drafts INGRAM prepared of Borrower B.M.'s amended 2021 and 2022 tax returns. Each of the tax returns was amended to reflect more income than previously reported. Borrower B.M. filed the amended 2021 and 2022 tax returns with the IRS, and HARRIS, INGRAM, and M.S. submitted and caused to be submitted, the amended tax returns to Mortgage Company A as part of the mortgage loan application.

17. On or about June 13, 2023, an employee of Mortgage Company A emailed M.S. requesting a signed year-to-date profit and loss statement for two of Borrower B.M.'s businesses. Later that morning, M.S. fabricated a profit and loss statement for two of Borrower B.M.'s businesses and submitted them to Mortgage Company A as part of the mortgage loan application.

18. On or about June 14, 2023, M.S. emailed INGRAM directing him to draft a CPA Letter for Borrower B.M. that explained the amended tax returns.

19. On or about June 14, 2023, INGRAM emailed M.S. the CPA Letter which M.S. submitted to Mortgage Company A as part of the mortgage loan application.

20. On or about July 5, 2023, M.S. emailed INGRAM directing him to create a current invoice for each of Borrower B.M.'s three businesses.

21. On or about July 6, 2023, INGRAM emailed M.S. one invoice for each of Borrower B.M.'s businesses. M.S. submitted the three invoices to Mortgage Company A as part of the mortgage loan application.

22. On or about July 7, 2023, following receipt of the invoices for each of Borrower B.M.'s businesses, Mortgage Company A requested two additional invoices for each of the three businesses.

23. On or about July 7, 2023, M.S. fabricated two additional invoices for each of Borrower B.M.'s three businesses and submitted the additional invoices to Mortgage Company A as part of the mortgage loan application.

24. On or about July 13, 2023, Borrower B.M. signed the final loan application and Mortgage Company A funded the loan.

## COUNT ONE
### (Conspiracy to Make False Statements and Writings – 18 U.S.C. § 371)

25.     The United States Attorney realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 24 of the Bill of Information, and further alleges that:

26.     Beginning from in or about 2021 and continuing through in or about 2023, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant,

## GREGORY HARRIS

did knowingly combine, conspire, confederate, and agree with INGRAM and unindicted co-conspirator M.S., and others known and unknown, to commit an offense against the United States, namely, to knowingly make, and cause to be made, false statements and reports in loan applications for the purpose of influencing a mortgage lending business in connection with loan applications, in violation of 18 U.S.C. § 1014.

### Object of the Conspiracy

27.     It was an object of the conspiracy that HARRIS, INGRAM, and co-conspirator M.S. submitted, and caused to be submitted, to Mortgage Company A, false mortgage loan applications, together with false and fabricated supporting documents, including false tax returns, and fabricated profit and loss statements, invoices, and CPA letters, which inflated borrowers' income and assets, all for the purpose of influencing Mortgage Company A to approve loans to borrowers and then to disburse millions of dollars in loan proceeds at closings for the purchase of residential homes.

### Manner and Means

28.     HARRIS, INGRAM, and M.S., and others known and unknown, carried out the conspiracy in the manner and means described in paragraphs 7 through 13 of this Bill of Information, among others.

### Overt Acts

29.     In furtherance of the conspiracy and to achieve the purpose and objects thereof, HARRIS, INGRAM, and M.S., and others known and unknown, committed at least one of the overt acts, among others, in paragraphs 14 through 24 of this Bill of Information.

All in violation of Title 18, United States Code, Section 371.

4

## NOTICE OF FORFEITURE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

    a.    All property which constitutes or is derived from proceeds of the violations set forth in this Bill of Information; and

    b.    If, as set forth in 21 U.S.C. § 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant(s) to the extent of the value of the property described in (a).

RUSS FERGUSON
UNITED STATES ATTORNEY

CARYN FINLEY
ASSISTANT UNITED STATES ATTORNEY

5